IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALFREDO IBARRA SILVA, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | No. 1:25-CV-2155-DAE |
| | § | |
| BONDI, *et al*., | § | |
| | § | |
| *Respondents*. | § | |
| | § | |

## ORDER

Before the Court is Petitioner Alfredo Ibarra Silva's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. # 1), and Respondents' Abbreviated Response (Dkt. # 4).

The Court finds this matter suitable for disposition without a hearing. After careful consideration of the parties' briefings and the relevant law, the Court **GRANTS** the Petition for Writ of Habeas Corpus (Dkt. # 1) for the reasons that follow.

## FACTUAL BACKGROUND

Petitioner Ibarra Silva is a citizen of Mexico who is currently detained at the T. Don Hutto Detention Center in Taylor, Texas. (Dkt. # 1 at 7.) In 2008, Petitioner entered the United States without inspection. (Id.) Since then, he has

been living in the United States continuously for over 18 years.  (Id.)  Petitioner is

married and has five U.S. Citizen children, ages 8 to 25.  (Id.)

On October 21, 2025, Petitioner was a passenger in a vehicle that was

stopped by state troopers in Austin, Texas.  (Dkt. # 1 at 7.)  After Petitioner was

unable to produce identification, the trooper contacted Immigration and Customs

Enforcement ("ICE"), who then took Petitioner into custody and initiated removal

proceedings against him.  (Id.)  Petitioner is being held without the opportunity for

a bond hearing.  (Id.; see Dkt. # 4 at 3.)

## PROCEDURAL HISTORY

On December 29, 2025, Petitioner filed a habeas petition asserting

that his detention without bond under the "mandatory detention" provision of the

Immigration and Nationality Act ("INAf"), 8 U.S.C. § 1225(b)(2), violates the

INA, the Administrative Procedure Act ("APA"), and his due process rights.[1]  (Dkt.

# 7 at 23–27.)

Pursuant to this division's standing order, this case was referred to

U.S. Magistrate Judge Susan Hightower.  (Dkt. # 2.)  On January 6, 2026, this

Court issued an order vacating the referral of this matter to Judge Hightower and

---

[1] Petitioner also asks the Court to find that he falls within the Maldonado Bautista
Bond Eligible Class, to the extent the Court concludes the class litigation is
relevant.  (Dkt. # 7 at 22–23); see Maldonado Bautista v. Santacruz, No. 5:25-cv-
01873-SSS-BFM, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025).

ordered Respondents Pamela Bondi, United States Attorney General; Kristi Noem,

Secretary of the United States Department of Homeland Security; Todd M. Lyons,

Director of United States Immigration and Customs Enforcement; Sylvester

Ortega, Field Office Director for Detention and Removal, U.S. Immigration and

Customs Enforcement; and Charlotte Collins, Warden, T. Don Hutto Detention

Center to show cause within three days as to why the petition should not be

granted.  (Dkt. # 3.)

       Respondents Pamela Bondi, Kristi Noem, Todd M. Lyons, and

Sylvester Ortega (herein, "Respondents")[2] timely filed an abbreviated response to

the Petition for Writ of Habeas Corpus to preserve their legal arguments and

conserve judicial and party resources.  (Dkt. # 4.)  They acknowledge that, because

there are no material differences between this case and the prior rulings of other

courts in this District concerning similar challenges, "the Court can decide this

matter without delay."  (Id. at 2, 4.)  Respondents ask that the Court incorporate the

filings in those prior cases[3] into the record of this habeas action.  (Id. at 2.)

---

[2] Respondent Collins, Warden of the T. Don Hutto Detention Center, has not joined
the response.

[3] Specifically, Respondents ask the Court to incorporate the filings in the following
matters: Navarro v. Bondi et al., No. 5:25CV1468-FB (W.D. Tex. Dec. 2, 2025);
Moradi v. Thompson et al., No. 5:25CV1470-OLG (W.D. Tex. Dec. 18, 2025);
Estupinan Reyes v. Thomspon et al., No. 5:25CV1590-XR (W.D. Tex. Dec. 12,
2025); Acosta-Balderas v. Bondi et al., No. 5:25CV1629-JKP (W.D. Tex. Dec. 11,
2025); Tisighe v. De Anda-Ybarra et al., 3:25CV593-KC (W.D. Tex. Dec. 5, 2025);
Chauhan v. Noem et al., 3:25CV574-DB (W.D. Tex. Dec. 8, 2025); Gvedashvili v.

## LEGAL STANDARD

"A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law." Buenrostro-Mendez v. Bondi, No. CV H-25-3726, 2025 WL 2886346, at *1 (S.D. Tex. Oct. 7, 2025) (internal citation and quotations omitted); 28 U.S.C. § 2241. The habeas petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." Villanueva v. Tate, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (internal citation and quotations omitted). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

## DISCUSSION

I.    Subject Matter Jurisdiction

As an initial matter, Respondents have argued in previous cases that the Court lacks jurisdiction to decide this case because 8 U.S.C. §§ 1252(g), (b)(9), and § 1225(b)(4) bar district court review of ICE's decision to detain Petitioner, the decision to commence removal proceedings, and any decision regarding the

---

Mooneyham et al., 6:25CV552-ADA-DTG (W.D. Tex. Dec. 22, 2025). The Court has reviewed the filings in Respondents' cited cases and will incorporate herein Respondents' legal arguments in those cases.

admission of a noncitizen.  See, e.g., Acosta-Balderas, No. 5:25CV1629-JKP, Dkt.
# 6 at 5–6.  Respondents have also previously argued that 8 U.S.C. § 1226(e) bars a
district court from "vacating any administrative order under the INA related to the
granting or revocation of a bond."  Navarro, No. 5:25CV1468-FB, Dkt. # 11 at 1.
The Court will address each provision in turn.

    A.    <u>8 U.S.C. § 1252(g)</u>

        Section 1252(g) provides that "no court shall have jurisdiction to hear
any cause or claim by or on behalf of any [noncitizen] arising from the decision or
action by the Attorney General to commence proceedings, adjudicate cases, or
execute removal orders against any [noncitizen] under this chapter."  8 U.S.C.
§ 1252(g).  The Supreme Court has emphasized that this section "applies only to
three discrete actions that the Attorney general may take: her 'decision or action' to
'*commence proceedings, adjudicate cases*, or *execute* removal orders."  <u>Reno v.</u>
<u>Am.-Arab Anti-Discrimination Comm.</u>, 525 U.S. 471, 482 (1999) (emphasis in
original) (quoting 8 U.S.C. § 1252(g)).  This language was not intended "to sweep
in any claim that can technically be said to 'arise from' the three listed actions of
the Attorney General."  <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 294 (2018).  Instead,
the provision is confined to "just those three specific actions themselves."  <u>Id.</u>
(citing <u>Reno</u>, 525 U.S. at 482–83).  Therefore, because Petitioner challenges the
lawfulness of his continued detention during the pendency of his removal

proceedings, § 1252(g) does not apply.[4] <u>Cardoso v. Reno</u>, 216 F.3d 512, 516–17 (5th Cir. 2000) ("[S]ection 1252(g) does not bar courts from reviewing [a noncitizen] detention order, because such an order, 'while intimately related to efforts to deport, is not itself a decision to "execute removal orders" and thus does not implicate section 1252(g).'"); <u>Santiago v. Noem</u>, No. EP-25-CV-361-KC, 2025 WL 2792588, at *3 (W.D. Tex. Oct. 2, 2025); <u>Pineda v. Noem</u>, No. SA-25-CV-01518-XR, 2025 WL 3471418, at *2 (W.D. Tex. Dec. 2, 2025); <u>YENNIFER VALERIA DAVILA MERCADO, Petitioner, v. TODD M. LYONS, Acting Dir. of US ICE, et al., Respondents.</u>, No. 5:25-CV-1623-JKP, 2025 WL 3654268, at *3 (W.D. Tex. Dec. 11, 2025).

    B.    <u>8 U.S.C. § 1252(b)(9)</u>

Next, § 1252(b)(9) states:

Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove [a noncitizen] from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section,

---

[4] Respondents have characterized Petitioner's challenge as one directed at "the decision to detain [Petitioner] in the first place." <u>Acosta-Balderas</u>, No. 5:25CV1629-JKP, Dkt. # 6 at 6. They have argued that this challenge "arises directly from the decision to commence and/or adjudicate removal proceedings against [Petitioner][,]" which is "exactly the type of challenge <u>Jennings</u> referenced as unreviewable." (<u>Id.</u>) The Court finds this argument unpersuasive. Petitioner is not challenging the decision to detain him but rather his continued detention without bond. (<u>See</u> Dkt. # 1 at 7, 13, 24.) Contrary to Respondents' claims, this falls outside the types of challenge § 1252(g) is explicitly limited to. <u>Jennings</u>, 583 U.S. at 294; <u>Cardoso</u>, 216 F.3d at 516–17.

no court shall have jurisdiction, by habeas corpus . . . , or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).  According to Respondents' previous arguments, this provision deprives the Court of jurisdiction because it consolidates all legal and factual challenges arising from removal proceedings into a single petition for review of a final removal order before the appropriate federal court of appeals. Acosta-Balderas, No.5:25CV1629-JKP, Dkt. # 6 at 6.  Section 1252(b)(9), however, does not bar the court's review where a petitioner is not "asking for review of an order of removal," "challenging the decision to detain them in the first place or seek removal," or "challenging any part of the process by which their removability will be determined."  Nielsen v. Preap, 586 U.S. 392, 402 (2019). Here, Petitioner is not challenging his removal proceedings but rather his continued detention without bond during the pendency of his removal proceedings. Section 1252(b)(9) thus does not present a jurisdictional bar.  Id. at 399–400, 402 (concluding that § 1252(b)(9) did not strip the court of jurisdiction where individuals challenged their detention without bond); Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 19 (2020) ("§ 1252(b)(9) does not present a jurisdictional bar" where those bringing suit "are not asking for review of an

order of removal, the decision to seek removal, or the process by which

removability will be determined.").[5]

      C.     <u>8 U.S.C. § 1225(b)(4)</u>

         Respondents have also repeatedly cited to 8 U.S.C. § 1225(b)(4) as a

potential bar. Section 1225(b)(4) relates to an immigration officer's ability to

challenge another immigration officer's favorable determination of admissibility.[6]

The Court sees no relevance of this provision to cases like Petitioner's, nor does

the Court find this provision precludes it from exercising jurisdiction. <u>Rojas v.</u>

<u>Noem</u>, No. EP-25-CV-443-KC, 2025 WL 3038262, at *2 (W.D. Tex. Oct. 30,

2025); <u>Estupinan Reyes v. Warden Bobby Thompson, et al.</u>, No. SA-25-CV-01590-

XR, 2025 WL 3654265, at *2 n.1 (W.D. Tex. Dec. 12, 2025).[7]

---

[5] Respondents have frequently cited <u>SQDC v. Bondi</u>, No. 25–3348 (PAM/DLM), 2025 WL2617973 (D. Minn. Sept. 9, 2025), for the proposition that §1252(b)(9) bars Petitioner's claims. <u>Acosta-Balderas</u>, No. 5:25CV1629-JKP, Dkt. # 6 at 6. Aside from that decision not being binding on this Court, the <u>SQDC</u> court offers no reasoning in support of its conclusion. Instead, the <u>SQDC</u> court merely states that "[a]lthough [petitioner] contends that § 1252(b)(9) does not bar his claims because he is challenging his ongoing detention, not the initial decision to detain him, this difference does not alter the Court's conclusion" without further explanation. <u>SQDC</u>, 2025 WL2617973, at *3. Respondents have not explained why that analysis should govern here, and the Court is not persuaded by it.

[6] Specifically, § 1225(b)(4) provides: "The decision of the examining immigration officer, if favorable to the admission of any [noncitizen], shall be subject to challenge by any other immigration officer and such challenge shall operate to take the [noncitizen] whose privilege to be admitted is so challenged, before an immigration judge for a proceeding under section 1229a of this title."

[7] To the extent that Respondents intended to refer to 8 U.S.C. § 1252(b)(4), a provision that discusses the scope and standard of review for orders of removal, the

D.    8 U.S.C. § 1226(e)

Finally, Respondents previously challenged the Court's jurisdiction under 8 U.S.C. § 1226(e). Navarro, No. 5:25CV1468-FB, Dkt. # 11 at 1. Section 1226(e) provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any [noncitizen] or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e). As the Navarro court explained, however, "this section shields only the Attorney General's discretionary detention decisions." No. 5:25CV1468-FB, Dkt. # 13 at 7 (citing Granados v. Noem, No. SA-25-CV-01464-XR, 2025 WL 3296314, at *3 (W.D. Tex. Nov. 26, 2025)). "It does not preclude, for example, challenges to the statutory framework that permits the [noncitizen's] detention without bail." Id. (citing Demore v. Kim, 538 U.S. 510, 516 (2003)) (internal quotations omitted). Thus, as Petitioner here does not bring a challenge to a discretionary decision of the Attorney General but rather brings a challenge to the statutory framework permitting his detention without bond, this provision does not

---

Court finds nothing in that provision that bars its jurisdiction here. Cardona-Lozano v. Noem, No. 1:25-CV-1784-RP, 2025 WL 3218244, *2 (W.D. Tex. Nov. 14, 2025) (concluding that "[b]ecause Petitioner does not assert a challenge to an order of removal, nothing in [§ 1252(b)(4)] bars Petitioner from seeking relief from his continued detention in this case").

bar this Court's review.  <u>Demore</u>, 538 U.S. at 516; <u>Granados</u>, 2025 WL 3296314, at *3.

      Accordingly, Respondents' jurisdictional challenges fail, and the Court has jurisdiction to consider Petitioner's claims.[8] <u>Estupinan Reyes</u>, 2025 WL 3654265, at *1 ("As a general matter, the Court has jurisdiction over Petitioner's habeas petition pursuant to 28 U.S.C. Sections 1331 and 2241."); <u>see also</u> <u>Jennings</u>, 583 U.S. at 293 ("We are required in this case to decide 'questions of law,' specifically, whether . . . certain statutory provisions require detention without a bond hearing.").

## II.   <u>The Merits of the Petition for Writ of Habeas Corpus</u>

      Having concluded that it has jurisdiction over Petitioner's claims, the Court turns to the merits of Petitioner's habeas petition.  In his Petition, Petitioner claims that Respondents lack statutory authority to detain him without a bond hearing and are violating his constitutional rights by doing so.  (<u>See</u> Dkt. # 1.)

---

[8] In their opposition, Respondents also include an argument that Petitioner "should be required to exhaust their administrative remedies before bringing a habeas challenge in federal court."  (Dkt. # 4 at 3.)  To the extent an administrative exhaustion requirement would normally apply in this situation, "[b]ecause Respondents argue the detention of Petitioner is mandatory, claiming no one, including the [immigration judge], can review the detention issue, any attempt to require Petitioner to exhaust any administrative remedies [would be] futile."  <u>See</u> <u>Lorenzo C. P., v. Noem</u>, No. 1:25-CV-181, 2025 WL 3684859, at *5 (S.D. Tex. Oct. 31, 2025); <u>see also</u> <u>Shi v. Lyons</u>, No. 1:25-CV-274, -- F. Supp. 3d --, 2025 WL 3637288, at *4 n.6 (S.D. Tex. Dec. 12, 2025) (holding that administrative exhaustion would be futile in light of <u>Matter of Yajure Hurtado</u>).

Because the Court agrees with Petitioner's statutory argument, it does not reach his constitutional or APA claims.[9]

Petitioner's statutory challenge to his ongoing detention turns on whether 8 U.S.C. §§ 1225(b)(2) or 1226(a) applies in his case.  Section 1225(b)(2), often referred to as the "mandatory detention statute," provides that a noncitizen "who is an applicant for admission" "shall be detained for a removal proceeding" "if the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted."  8 U.S.C. § 1225(b)(2)(A).  "Individuals detained under § 1225(b)(2) receive no bond hearing and can only be released on humanitarian parole at the arresting agency's discretion."  Cardona-Lozano, 2025 WL 3218244, *3 (citing Jennings, 583 U.S. at 288).  On the other hand, § 1226(a), the "discretionary detention statute," allows for release on bond and provides 'procedural protections that are not afforded under the mandatory detention statute, such as the right to a bond re-determination hearing in front of an Immigration Judge and a right to appeal any custody determination."  Buenrostro-Mendez v. Bondi, No. CV H-25-3726, 2025 WL 2886346, at *2 (S.D. Tex. Oct. 7, 2025) (quoting Chiliquinga Yumbillo v. Stamper, No. 2:25-cv-479, 2025 WL 2783642, at *2 (D. Me. Sep. 30, 2025)).  Section

---

[9] The Court also does not reach the parties' arguments as to the effect of Maldonado Bautista in the instant case.

1226(a) applies to noncitizens arrested and detained "[o]n a warrant issued by the

Attorney General[.]"  8 U.S.C. § 1226(a).

"The Department of Homeland Security's 'longstanding

interpretation' had been that § 1226, not § 1225, applies to noncitizens like

[Petitioner] who are already present in the country." Buenrostro-Mendez, 2025

WL 2886346, at *2 (quoting Savane v. Francis, No. 1:25-CV-6666-GHW, 2025

WL 2774452, at *5 (S.D.N.Y. Sept. 28, 2025)).  However, in July 2025, DHS

changed its position.  Id.  In a memo sent to all ICE employees, DHS announced

that noncitizens already present in the country who had not been admitted were to

be "treated in the same manner that 'arriving [noncitizens]' have historically been

treated," that is, subject to mandatory detention under § 1225(b)(2).  Maldonado

Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *5 (D.

Nev. Sept. 17, 2025); Cardona-Lozano, 2025 WL 3218244, *6.  The Board of

Immigration Appeals ("BIA") adopted this new interpretation in a decision issued

on September 5, 2025.  Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025).

Specifically, the BIA held that the immigration judge "did not have authority over

the bond request because [noncitizens] who are present in the United States

without admission are applicants for admission as defined under . . .  8 U.S.C.

§ 1225(b)(2)(A), and must be detained for the duration of their removal

proceedings."  Id. at 220.  As a result of these changes, "[t]he government now

applies § 1225 to *all* applicants for admission." <u>Buenrostro-Mendez</u>, 2025 WL 2886346, at *2 (emphasis in original).

Petitioner asserts that <u>Matter of Yajure Hurtado</u> misinterprets the INA. (Dkt. # 1 at 8, 20.)  He argues that, as is demonstrated by the statutory language, longstanding practice, and precedent, § 1226 "authorizes the detention of noncitizens in standard removal proceedings before an immigration judge," whereas § 1225(b)(2) applies to "recent arrivals seeking admission."  (<u>Id.</u> at 14.) Accordingly, because § 1225(b)(2) does not apply to people like Petitioner, who entered the U.S. without inspection and is not presently arriving into the United States, his detention under that provision is unlawful.  (<u>Id.</u> at 11, 14–15, 19, 24.) Respondents counter that Petitioner can be properly detained under § 1225(b)(2) because he is an "applicant for admission."  (Dkt. # 4 at 3.)  They have argued in previous briefings that § 1225(b)(2) applies to anyone who, like Petitioner, is a noncitizen who was found to be present within the United States without ever having been admitted—regardless of how long such an individual has been present in the country.  <u>See, e.g.</u>, <u>Acosta-Balderas</u>, No. 5:25CV1629-JKP, Dkt. # 6 at 3; <u>Estupinan Reyes</u>, No. 5:25CV1590-XR, Dkt. # 7 at 4–8.  To make this argument, Respondents have relied on § 1225(a)(1)'s definition of an "applicant for admission," which defines the term as a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C.

13

§ 1225(a)(1).  Respondents have asserted that this language unambiguously covers individuals like Petitioner.  See, e.g., Acosta-Balderas, No. 5:25CV1629-JKP, Dkt. # 6 at 3; Estupinan Reyes, No. 5:25CV1590-XR, Dkt. # 7 at 4–8.  Therefore, because DHS has determined that Petitioner is "seeking admission" and is not clearly and beyond a doubt entitled to be admitted to the United States, he can be properly detained pursuant to § 1225(b)(2).  (Id.)

This case does not present a novel question.  Since July 2025, courts across the country have considered and repeatedly rejected Respondents' broad reading of § 1225(b)(2).  See, e.g., Mboup v. Field Off. Dir. of New Jersey Immigr. & Customs Enf't, No. 2:25-CV-16882 (MEF), 2025 WL 3062791, at *1 & n.3 (D.N.J. Nov. 3, 2025) (collecting cases); Lopez-Campos v. Raycraft, 797 F. Supp. 3d 771, 784 & n.5 (E.D. Mich. 2025) (same); Vargas Bondi, No. SA-25-CV-1023-FB (HJB), 2025 WL 3300446, at *4  (W.D. Tex. Nov. 12, 2025), report and recommendation adopted sub nom. Vargas v. Bondi, No. SA-25-CV-1023-FB, 2025 WL 3300141 (W.D. Tex. Nov. 26, 2025) (same); Buenrostro-Mendez, 2025 WL 2886346, at *2, 3 (explaining that "[t]his case is one of a number of recent lawsuits filed challenging the federal government's authority to detain noncitizens during the pendency of removal proceedings under 8 U.S.C. § 1225(b)" and noting that "almost every district court  to consider this issue" has rejected the

14

Government's new interpretation).  This Court reaches the same conclusion for

several reasons.

First, Respondent's reading of § 1225(b)(2) conflicts with the plain

language of the statute and established rules of statutory interpretation.  By its

terms, § 1225(b)(2) applies when three conditions are met: "(1) the person is an

'applicant for admission'; (2) the person is 'seeking admission'; and (3) an

'examining immigration officer determines' the person 'is not clearly and beyond a

doubt entitled to be admitted.'"  Estupinan Reyes, 2025 WL 3654265, at *3.

"Multiple courts have read this 'seeking admission' requirement to mean a

noncitizen present in the United States without admission who *has recently arrived*

*and is actively seeking admission*, not a noncitizen who has been residing in the

country for years."  Cardona-Lozano, 2025 WL 3218244, *4 (emphasis in

original); Rojas Vargas v. Bondi, No. 1:25-CV-01699-DAE, 2025 WL 3251728, at

*3 (W.D. Tex. Nov. 5, 2025).  This Court agrees with that interpretation.  See 8

U.S.C. § 1101(a)(13) (A) (defining "admission" and "admitted" as referring to "the

lawful entry of the [noncitizen] into the United States after inspection and

authorization by an immigration officer"); Martinez v. Mukasey, 519 F.3d 532, 544

(5th Cir. 2008), as amended (June 5, 2008) ("Under th[e] statutory definition,

'admission' is the lawful *entry* of [a noncitizen] after inspection, something quite

different, obviously, from post-entry adjustment of status." (emphasis in original));

Estupinan Reyes, 2025 WL 3654265, at *4 (explaining that petitioner who had been in the country for decades was not seeking entry, much less lawful entry, and so could not be considered to be "seeking admission").

      If, on the other hand, § 1225(b)(2) was intended to encompass all "applicant[s] for admission," irrespective of whether they are recent arrivals, as Respondents effectively contend, "there would be no need to include the phrase 'seeking admission' in the statute." Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 488 (S.D.N.Y. 2025). Such an interpretation therefore renders "seeking admission" meaningless and violates the rule against surplusage. Id.; Cardona-Lozano, 2025 WL 3218244, *4; Rojas Vargas, 2025 WL 3251728, at *3; Martinez v. Hyde, 792 F. Supp. 3d 211 (D. Mass. 2025) ("Respondents' selective reading of the statute— which ignores its 'seeking admission' language—violates the rule against surplusage and negates the plain meaning of the text.").

      Respondents have previously taken the position that individuals like Petitioner are "seeking admission" merely because they were issued a Notice to Appear ("NTA"). See, e.g., Acosta-Balderas, No. 5:25CV1629-JKP, Dkt. # 6 at 3; Estupinan Reyes, No. 5:25CV1590-XR, Dkt. # 7 at 4. They argue that through the issuance of the NTA, DHS determined that Petitioner is a noncitizen "seeking admission." (Id.) The Court finds this argument unpersuasive. A Notice to Appear is issued when an individual is placed in removal proceedings. 8 U.S.C.

16

§ 1229(a).  Petitioner's NTA states that he is in removal proceedings because he is a noncitizen "present in the United States who has not been admitted or paroled." (Dkt. # 1-3 at 2.)  Nowhere in Petitioner's NTA is there a determination that he is "seeking admission."  (Id.)  And the Court does not agree with Respondents' contention that simply because Petitioner is not seeking removal from the United States, he must be "seeking admission." Acosta-Balderas, No. 5:25CV1629-JKP, Dkt. # 6 at 3–4; Estupinan Reyes, No. 5:25CV1590-XR, Dkt. # 7 at 7; see Mukasey, 519 F.3d at 541, 544 (equating seeking "admission" with seeking "entry" and noting that "admission" is "something quite different, obviously, from post-entry adjustment of status").

Moreover, Respondents' interpretation would narrow § 1226 so drastically that it would rarely, if ever, apply.  Respondents have insisted that under their interpretation, § 1226(a) would still apply to noncitizens "within the interior of the United States who were once lawfully admitted but are now subject to removal from the United States under 8 U.S.C. § 1227(a)." Acosta-Balderas, No. 5:25CV1629-JKP, Dkt. # 6 at 4–5; Estupinan Reyes, No. 5:25CV1590-XR, Dkt. # 7 at 8–9.  For example, it would apply to noncitizens who were initially lawfully admitted but were then placed in removal proceedings after overstaying a visa. (Id.)  The broad language of § 1226(a), however, belies this interpretation.  See 8 U.S.C. § 1226(a); Cardona-Lozano, 2025 WL 3218244, *4.  Limiting the provision

17

to visa overstays would be inconsistent with both its text and structure, and the Court declines to do so. See id. And, as numerous courts have noted, "there is no indication that Congress intended § 1226 to be limited only to visa overstays. Indeed, there is nothing in the history or application of § 1226 to even remotely suggest that it was intended to have such a narrow reach." Lopez Benitez, 2025 WL 2371588, at *8. "As a result, a more natural way to read the plain language of these two statutory sections alongside one another is to read § 1226 as governing detention of noncitizens already residing in the United States and § 1225 as governing detention of recently arrived noncitizens who are actively seeking admission to the country." Cardona-Lozano, 2025 WL 3218244, *4.

This reading is bolstered by the Supreme Court's analysis in Jennings. Although the Supreme Court ultimately answered a different question than the one at bar here, they explained in that case that "U.S. immigration law authorizes the Government to detain certain [noncitizens] *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." Jennings, 583 U.S. at 289 (emphasis added). This discussion highlights that people like Petitioner are subject to detention under § 1226(a), not § 1225(b)(2).

18

Recent decisions in this District have found additional support for this interpretation in legislative history, recent amendments, and longstanding agency practice. See e.g., Cardona-Lozano, 2025 WL 3218244, *5–6. As discussed in those decisions, §§ 1225(b)(2) and 1226 were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996. Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Contrary to Respondents' assertions, "[t]he IIRIRA left in place an earlier distinction between noncitizens arrested in the interior of the country (not subject to mandatory detention) and noncitizens stopped at the border (subject to mandatory detention)." Cardona-Lozano, 2025 WL 3218244, *5 (citing Maldonado Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *4 (D. Nev. Sept. 17, 2025)); see H.R. Rep. No. 104-469, pt. 1, at 229 (1996); H.R. Rep. No. 104-828, at 210 (1996) (Conf. Rep.); see also Rodriguez v. Bostock, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *23–24 (W.D. Wash. Sept. 30, 2025) (explaining why the IIRIRA's legislative history does not support Respondents' arguments).

In addition, earlier this year, § 1226 was amended by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). The Laken Riley Act authorizes mandatory detention for noncitizens charged with or convicted of certain crimes. Id. This Court concurs with the opinion in Cardona-Lozano that "[i]f all

noncitizens charged as inadmissible due to entry without inspection were already subject to mandatory detention under § 1225(b)(2), it would make no sense for Congress to have amended the statute to require mandatory detention for specific subcategories of those individuals." 2025 WL 3218244, *5. The Court is not convinced by Respondents' argument that their interpretation does not render the Laken Riley Act superfluous simply because "redundancies are common in statutory drafting." Acosta-Balderas, No. 5:25CV1629-JKP, Dkt. # 6 at 5; Estupinan Reyes, No. 5:25CV1590-XR, Dkt. # 7 at 9. As the court noted in Cardona-Lozano, Respondents' interpretation would not make merely a few words meaningless but rather the entire amendment. 2025 WL 3218244, *5. The Court declines to adopt such a reading.

Finally, Respondents' interpretation flies in the face of longstanding agency practice. See Loper Bright Enters. v. Raimondo, 603 U.S. 369, 386 (2024) ("[T]he longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is."). For decades since the passage of IIRIRA, "the agencies charged with interpreting and enforcing the INA applied § 1226(a) to noncitizens like Petitioner, who entered the U.S. without inspection and were apprehended while residing in the U.S." Vasquez, 2025 WL 2676082, at *4; see Cardona-Lozano, 2025 WL 3218244, at *6; Lopez-Arevelo v. Ripa, No. EP-25-CV-337-KC, 2025 WL 2691828, at *7 (W.D. Tex. Sept. 22,

2025); <u>Rodriguez</u>, 2025 WL 2782499, at *24–26.  Regulations promulgated after

IIRIRA's enactment by the Executive Office for Immigration Review ("EOIR")

explained this practice.  <u>Inspection and Expedited Removal of Aliens</u>, 62 Fed. Reg.

10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission,

[noncitizens] who are present without having been admitted or paroled (formerly

referred to as [noncitizens] who entered without inspection) will be eligible for

bond and bond redetermination . . . The effect of this change is that inadmissible

[noncitizens], except for arriving [noncitizens], have available to them bond

redetermination hearings before an immigration judge, while arriving [noncitizens]

do not. This procedure maintains the status quo . . . ").

       As described previously, this approach shifted in July 2025, and in

September 2025, the new interpretation of § 1225(b)(2) was adopted by the BIA.

<u>Matter of Yajure Hurtado</u>, 29 I. & N. Dec. 216 (BIA 2025).  In <u>Loper Bright</u>, the

Supreme Court clarified that the BIA's interpretation of the INA is not entitled to

any deference by this Court.  603 U.S. at 412–13.  Instead, while an agency's

decision "may help inform the Court's inquiry, it does so only to the extent of its

'power to persuade.'"  <u>Rodriguez</u>, 2025 WL 2782499, at *25 (quoting <u>Loper</u>

<u>Bright</u>, 603 U.S. at 413, 402) (cleaned up).  However, when an agency's current

position conflicts with its earlier pronouncements, as here, even the agency's

"power to persuade" is diminished.  <u>Cardona-Lozano</u>, 2025 WL 3218244, at *6;

see Rodriguez, 2025 WL 2782499, at *26 (discussing two unpublished decisions

from 2023 where the BIA took the opposite position to that taken in Matter of

Yajure Hurtado); Cardona-Lozano, 2025 WL 3218244, at *6 (discussing a

precedential decision issued one month prior to Matter of Yajure Hurtado applying

§ 1226 to the detention of a noncitizen who had entered without inspection three

years before).

        In recent months, courts across the country have repeatedly rejected

the BIA's novel interpretation of the INA.  See Buenrostro-Mendez, 2025 WL

2886346, at *3 ("As almost every district court to consider this issue has

concluded, 'the statutory text, the statute's history, Congressional intent, and

§ 1226(a)'s application for the past three decades' support finding that § 1226

applies to these circumstances."); Belsai D.S. v. Bondi, No. 25-CV-3682, 2025 WL

2802947, at *6 (D. Minn. Oct. 1, 2025) (calling the decisions a "chorus" of courts

rejecting respondents' interpretation of § 1225(b)(2)); (see Dkt. # 1 at 16–18 (citing

cases across the country and those in this District)).  Those courts have time and

again found that petitioners who entered without inspection and have long resided

in the United States cannot be detained under § 1225(b)(2).  See id.; Cardona-

Lozano, 2025 WL 3218244, at *6.  This Court agrees with those well-reasoned

opinions.

Here, Petitioner entered without inspection and has been present in the United States continuously for over 18 years.  For all of the reasons described above and cited by other district courts, he cannot be said to be "seeking admission" into the United States.  Accordingly, his detention without bond under § 1225(b)(2) violates the INA, and he is entitled to relief.[10]  Estupinan Reyes, 2025 WL 3654265, at *4; Davila Mercado, 2025 WL 3654268, at *7; see Vargas Bondi, 2025 WL 3300446, at *5 (discussing why the appropriate habeas relief is release rather than a bond redetermination hearing); see, e.g., Estupinan Reyes, No. 5:25CV1590-XR, Dkt. # 7 at 3 ("The only relief available to Petitioner through habeas is release from custody.").

As a final matter, "[a]lthough Petitioner invokes jurisdiction under 28 U.S.C. §§ 1331 and 2241 and seeks attorney fees, the Court treats the instant action solely as a habeas action under § 2241." Davila Mercado, 2025 WL 3654268, at *7.  Here, as in Davila Mercado, Petitioner has not specifically brought any non-habeas claim and has paid only the minimal habeas filing fee.  Accordingly, the Court denies any request for attorney's fees in this case.  Id.; Aldana Perez v.

---

[10] "Absent an assertion by Respondents that they are detaining Petitioner under § 1226, the Court has no need to consider whether § 1226 is a valid basis for Petitioner's current detention." Davila Mercado, 2025 WL 3654268, at *6; see also Estupinan Reyes, 2025 WL 3654265, at *4.  Respondents do not anywhere assert that they are detaining Petitioner pursuant to § 1226, (See Dkt. # 4), and so the Court will not consider that provision as a basis for Petitioner's detention. Estupinan Reyes, 2025 WL 3654265, at *4.

<u>Noem, et. al.</u>, No. SA-25-CV-01534-XR, 2025 WL 3654262, at *7 (W.D. Tex. Dec. 5, 2025); <u>Barco v. Witte</u>, 65 F.4th 782, 785 (5th Cir. 2023) (holding that the Equal Access to Justice Act does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions).

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** the Petition for

Habeas Corpus.  (Dkt. # 1.)  It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Alfredo Ibarra Silva from custody, under conditions of release no more restrictive than those in place prior to the detention at issue in this case, to a public place by **no later than 5:00 p.m. on January 14, 2026**.

2. Respondents must **NOTIFY** Petitioner's counsel by email (maria@oconnorimmigration.com) of the exact location and exact time of Petitioner's release as soon as practicable and **no less than two hours before his release**.

3. Respondents are enjoined from further detaining Petitioner under the asserted detention authority, 8 U.S.C. § 1225.  If Petitioner is re-detained pursuant to 8 U.S.C. § 1226, all applicable procedures must be followed, including that he be afforded a bond hearing.

4. The parties shall **FILE** individual status reports no later than **6:00 p.m. January 15, 2026**, detailing their compliance with this Order.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, January 12, 2026.

_____
David Alan Ezra
Senior United States District Judge